[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE
The plaintiff in this action, Dixon, was the seller of real CT Page 2496 property in Riverside; the defendants are the buyers, Anne Caroe and Greenwich Investments, Inc. Other defendants include(d) the seller's listing agent, Susan Kane, and Kane's employer, William Raveis Real Estate, and Caroe's employer, Beers Hunt, Inc., also a real estate agency. Beers Hunt was dropped from the suit on May 24, 1990. Defendant Caroe is a licensed real estate broker. The defendant, Greenwich Investments, Inc., is a Delaware corporation of which defendant Caroe is a stockholder and officer.
The plaintiff filed this action in one count as against all defendants and a second count as against the two real estate agents and their employers on March 26, 1990; the closing of the real estate sale was July 5, 1984. The first count against all defendants alleges breach of fiduciary obligations and fraud. The second count alleges that the real estate brokers commission should be repaid to the plaintiff. Specifically the complaint alleges that the defendants, acting in concert, concealed material facts from the plaintiff and made active misrepresentations as to their intentions and as to the defendant Caroe's plans for the property, which were to buy the property on her own account with the assistance of defendant Greenwich Investments, Inc., a real estate corporation of which Caroe and her husband were officers, and to sell the property quickly for a substantial profit. The existence of Greenwich Investments, Inc., was at all times concealed from the plaintiff, according to the complaint.
The defendants Kane and Caroe demanded and received full commissions at the closing. The sale price was $310,000, the plaintiff having been persuaded to reduce her asking price by $19,000 by the primary agent Kane. Subsequently the defendant Greenwich Investments, Inc. resold the property for $652,000. (It is not clear from the pleadings how long the interval between the sale and resale was.) The markup is approximately 107%.
The defendants Caroe and Greenwich Investments, Inc. now move to strike the complaint on the grounds that (1) neither Caroe nor Greenwich Investments, Inc. were in privity with the plaintiff and that this alone vitiates any charge that either of these defendants were under a fiduciary duty to the plaintiff and (2) the action is time barred under Conn. Gen. Stat. Sections52-577 and 52-581.
While a motion to strike is normally an improper vehicle to raise the statute of limitations as a defense, Conn. Practice Bk. 164, where the complaint contains all facts pertinent to the determination of the limitations issue, it is proper to raise the question by motion to strike. Vilcinskas v. Sears, Roebuck 
Co., 144 Conn. 70, 72 (1956). Accord, Allen v. Endrukaitis, CT Page 249735 Conn. Sup. 286, 288 (1979). The plaintiff here has alleged with considerable specificity the relevant dates of all acts having legal significance to her claims. The plaintiff has alleged, in effect, that the defendants are liable for breach of the fiduciary obligations flowing from the listing agreement signed by the plaintiff and defendant Kane. As to defendants Kane and Raveis, therefore, the relevant statute of limitations is Conn. Gen. Stat. 52-576 (applicable to actions upon a similar contract). Similarly, as to defendant Caroe and defendant Greenwich Investments, Inc., the action is on a contract implied by law, under Conn. Gen. Stat. 20-311 et seq. and general principles of agency law, as will be noted below. The defendants argue that the relevant statute of limitations is either Conn. Gen. Stat. 52-577 (applicable to actions founded upon a tort) or52-581 (applicable to actions upon an oral contract), and the action is barred as a result by one of the three-year limitations statutes. This argument is incorrect; the defendants were under fiduciary duties to the plaintiff, as evidenced by the written listing agreement (a simple written contract) and by the demand and acceptance of a broker's commission (proof of agency).
AS TO DEFENDANT ANNE CAROE:
A motion to strike admits all facts well pleaded. Mincachos v. CBS, Inc., 196 Conn. 91, 108 (1985). In this case the plaintiff has alleged that defendant Caroe was a licensed real estate broker who was a "participating sub-agent," and was therefore under a fiduciary obligation to the plaintiff seller.
Whether the defendants were agents of the plaintiffs is a question of fact. Cohen v. Meola, 184 Conn. 218, 220 (1981); Teris v. Shearson Hayden Stone, Inc., 5 Conn. App. 691, 693
(1985). In addition, "[t]he relation need not arise from an express appointment and an acceptance but is often established from the words and conduct of the parties and the circumstances of the particular case." Kurtz v. Farrington, 104 Conn. 257,269 (1926). See also Alaimo v. Royer, 188 Conn. 36, 41 (1982). In Licari v. Blackwelder, 14 Conn. App. 46, 53 (1988), the appellate court held that in some situations, a court could find "that the [sub-agent broker] defendants were obligated to the plaintiffs through the [sub-agents] relationship with the [primary agent]. . . That case goes on to state:
 A real estate broker is a fiduciary. As such, he is required to exercise fidelity and good faith, and "cannot put himself in a position antagonistic to his principal's interest" by fraudulent conduct, acting adversely to his client's interests, or by failing to communicate information he may possess CT Page 2498 or acquire which is or may be material to his principal's advantage. A real estate broker acting as a subagent with the express permission of another broker who has the listing of the property to be sold is under the same duty as the primary broker to act in the utmost good faith.
Licari v. Blackwelder, 14 Conn. App. 46, 53-54 (1988). (Citations omitted).
The same rigorous standard is advocated in the Second Restatement of Agency, Section 428, comment a:
 [O]ne who agrees with the agent to act for the principal in a transaction becomes a subagent, and owes to the principal all the duties of a fiduciary to a beneficiary. He is liable for anything received for the principal, subject to any right of set-off which he or the agent may have. He is liable for any breach of loyalty, as when he discloses, or makes a profit from the use of, confidential information. Further if he undertakes to act in the principal's affairs, as in the collection of a note, and because of reliance upon his performance by the principal or the agent, the principal suffers a loss because of his failure to perform, he is subject to liability to the principal as well as to the agent.
The plaintiff here has alleged facts sufficient to categorize defendant Caroe as a participating co-broker and thus a fiduciary. The defendants argue that "[m]ere assertion by plaintiff that three other defendants invited other brokers to attempt to act as participating brokers and sub-agents is insufficient to show . . . a . . . fiduciary relationship existed." Defendants' Memo, p. 3. But the combination of that assertion with the allegation that offers were forwarded from an undisclosed principal (Complaint, paragraphs 10-11), the allegation that the subagent fully intended a quick turn-around windfall (Id., at paragraph 12(b) i- iiii), combined with the assertion that both agent Kane and subagent Caroe demanded full co-brokers' commissions at the closing (Id., paragraph 13) coalesce, to show that both Kane and Caroe were under the above-described fiduciary obligations to the plaintiff. The demand and receipt of in excess of $7,500 in commission will suffice in itself to estop the co-broker from denying his agency. "It is well established law that one enjoying rights is estopped from repudiating the dependant conditions and obligations which he has assumed. Parties cannot accept benefits under a contract fairly made and at the same time question its validity." Mozzochi v. Luchs, 35 Conn. Sup. 19, 23 (1977). CT Page 2499
The observation may be made that the plaintiff here, received full (or nearly full) measure of the price she asked, and may not therefore complain. It is elementary that without an injury there can be no remedy. But the case of Harper v. Adametz, 112 Conn. 218, 225 (1955), states that "[e]quity will not permit these defendants to keep a benefit which came to them by reason of . . . fraudulent conduct." "Generally speaking, an action in tort or on contract by a principal against his real-estate broke or agent . . . may be maintained only by establishing that such violation of duty caused the principal actual loss or that the violation resulted in the unjust enrichment of the broker or agent." 12 Am. Jur.2d BROKERS, Sec. 83, p. 836 (Citations omitted) (Emphasis added). Harper v. Adametz provides a precedent for holding the breaching parties liable to disgorge the entirety of their profits under the doctrine of constructive trust. "If one acquires property by means of a fraudulent misrepresentation of a material fact, equity will assist the defrauded person by fastening a constructive trust on the property." Id. at 225.
AS TO DEFENDANT GREENWICH INVESTMENTS, INC.:
There is authority for the proposition that "[p]ersons who knowingly join a fiduciary in an enterprise which constitutes a breach of his fiduciary duty of trust are jointly and severally liable for any injury which results." Governors Grove Condominium Assn., Inc. v. Hill Development Corp., 36 Conn. Sup. 144,154 (1980). If this liability sounds in tort, the action against Greenwich Investments, Inc., is time barred by Conn. Gen. Stat. 52-577. Whereas if the action is on a contract, as with the agent and subagent, the action is not time barred, as it falls under 52-576. In order to determine the independence and involvement of Greenwich Investments, Inc., the complaint should be interpreted in the manner most favorable to the pleader. Gordon v. Bridgeport Housing Authority, 208 Conn. 16, 170
(1988). The complaint alleges that defendant Caroe and her husband are stockholders and officers of Greenwich Investments, Inc. (Complaint, paragraph 14). The complaint further alleges that Caroe acted as an "undisclosed agent[s] for Greenwich Investments, Inc." (Id., paragraph 17), and that the defendant Caroe's husband, as nominal grantee in the sale, appears to have been no more than a legal "straw man" who conveyed title over to the defendant Greenwich Investors, Inc. on the same day he received it. (Id., paragraph 15). While a motion to strike must be tested by the facts provable under the allegations of the pleading to which it is addressed and may not be aided by the assumption of any facts not therein alleged, Fraser v. Henninger,173 Conn. 52, 60 (1977), "the court must take the facts alleged favorably to the pleader and view those facts in a broad fashion, CT Page 2500 not strictly limited to the allegations, but also including the facts necessarily implied by and fairly provable under them." Geller v. Marvin H. Schaefer Inspection Service, 4 CSCR 694
89). The facts alleged imply that Greenwich Investments, Inc. was an "alter ego" of defendant Caroe in this transaction. See, e.g., Angelo Tomasso, Inc. v. Armor Construction Paving, Inc., 187 Conn. 544, 552-53 (1982). If this is proven, any fiduciary obligation owed the plaintiff by Caroe is owed equally by Greenwich Investments, Inc. The allegation (in paragraph 15 of the complaint) that grantee Edward Caroe re-conveyed the Property to Greenwich Investments, Inc. the same day, raises factual questions which can only be properly resolved by a trier of fact.
For all the foregoing reasons, the motion to strike is denied as to both Anne Caroe and Greenwich Investments, Inc.
CIOFFI, J.