[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action seeking specific performance and other relief based on an agreement in the nature of an offer of "first refusal" to the plaintiff for premises in East Hartford now owned by the Estate of Charles Kinstler. The defendant estate filed an amended answer, special defense and counterclaim dated January 8, 1993 seeking quiet title relief, a declaratory judgment holding the alleged right of first refusal invalid and other relief.
The right of first refusal in dispute is based on a two page agreement dated November 2, 1967 and recorded in volume CT Page 10207 453 at pages 409 and 410 of the East Hartford Land Records on January 24, 1970, in which Charles F. Kinstler and Frieda L. Kinstler "sellers" referring to a sale "this date" made by them of the Southerly portion of No. 16 Main Street, East Hartford, to Fairway Landscapers, Inc., enter into the following agreement with Fairway Landscapers, Inc. and John J. Kelly:
 Kelley shall have a right of first refusal to purchase said remaining property of the Sellers under the same terms and conditions upon which any ready, willing and able purchaser and the Sellers might agree. The Sellers agree to give Kelley immediate written notice of any offer to purchase or agreement to purchase said premises. Kelley shall have fifteen (15) days from the receipt of any such notice in which to notify the Sellers in writing that he will purchase said property upon the same terms and conditions. In the event said offer to purchase or agreement to purchase provides for a selling price in excess of Seventy-Five Thousand (75,000) Dollars, Kelley shall not be obligated to pay the full purchase price but shall only be obligated to pay the sum of Seventy-Five Thousand (75,000) Dollars. All terms and conditions of any such offer or agreement, other than said selling price in excess of Seventy-Five Thousand (75,000) Dollars shall remain the same.
The agreement is signed by the Kinstlers and John J. Kelley, individually and as president of Fairway.
Trial before this court commenced on July 21, 1993, was thereafter continued to July 23, 1993, when counsel for John J. Kelley advised the court that his client was not present, had no intention of being present in the future and had no further interest in the case. The court entered a nonsuit and default against John J. Kelley, and continued the case until July 30, at which time John J. Kelley was present, and the court denied his motions to set aside the default and nonsuit. The parties agreed to submit memoranda of law which could be considered by the court in making its final decision in the case. CT Page 10208
 I.
At trial, it appeared that following the execution of the Agreement, Frieda Kinstler died, leaving Charles Kinstler as the sole owner of the Main Street property. In December, 1990, the defendant, Maryann Ostrout, was appointed conservatrix for Charles Kinstler. In May, 1991 the defendant, acting as conservatrix, applied to the probate court for approval of the sale of the Main Street property to herself. The defendant withdrew her request for probate court approval prior to any probate court action on the matter. Charles Kinstler died on June 17, 1991, and the defendant was named the administratrix of his estate.
 II.
The plaintiff claims that the first refusal provision contained in the Agreement is valid and should be enforced at this time, since the defendant, while serving as conservatrix for Charles Kinstler, "triggered" the plaintiff's right of first refusal by requesting that the probate court approve the sale of the property to her. Alternatively, the plaintiff argues that the right of first refusal was triggered by the death of Charles Kinstler because the parties to the Agreement intended that the right of first refusal was to be invoked in either of two circumstances: 1) at any point during the Kinstlers' lifetime at which they received an offer to buy the property, or 2) upon the death of the last surviving joint tenant.
The defendant claims that the right of first refusal contained in the agreement should be declared invalid on the bases that 1) the Agreement did not adequately comply with the statute of frauds, 2) the Agreement violates the rule against perpetuities and constitutes an unreasonable restraint on alienation, 3) the Agreement has expired because its purpose and intent have been rendered invalid, and 4) the Agreement was personal to the Kinstlers and therefore did not run with the land.
 III.
A right of first refusal and an option have different legal consequences. An option to purchase is a "contractual right which relates to an interest in land and gives the CT Page 10209 option-holder the right to buy the property." (Emphasis added). Texaco Inc. v. Commissioner of Transportation,34 Conn. Sup. 194, 196, 383 A.2d 1060 (Super.Ct. 1977). Unlike an option to purchase, a "right of first refusal does not prior to the fulfillment of [certain] conditions, constitute an offer to sell . . . or create . . . the power to compel a sale by acceptance." Smith v. Hevro Realty Corporation,199 Conn. 330, 335, 507 A.2d 980 (1986). Rather, "it merely requires the owner, when and if he decides to sell, to offer the property first to the [holder] at the stipulated price." New Haven trap Rock Co. v. Tata, 149 Conn. 181, 186,177 A.2d 798 (1962).
In our view, Saraceno v. Carrano, 92 Conn. 563,103 A. 631 (1918) requires a decision in favor of the defendant in this case. Saraceno involved a contract which gave the defendant the option to purchase certain property owned by the plaintiff "`if . . . [the plaintiff] at any time should desire to sell said property.'" Id., 564. In a separate contemporaneous agreement, the parties agreed that the defendant would give the plaintiff $200 if she elected to sell the property within one month, and $100 if she elected to sell the property within two months. The court characterized this contract as a "double option," which it defined as "a promise on the part of the plaintiff to sell the property at her option to the defendant at his option." The court concluded that such an agreement "is one which neither party can enforce, either by an action for specific performance or by compensation in damages for its breach, unless the plaintiff elected to sell and the defendant elected to buy at the same time," (Emphasis added.) Id., 565-66. The "double option" did not require the plaintiff to sell, but rather, allowed "the plaintiff . . . the right to avail herself of any privilege that the law gives in making her election either to sell or not to sell" and "[n]o court would attempt to order the plaintiff to elect to sell or to give the defendant damages for her failure to so elect." Id., 566.
In Saraceno, the contract, like the Agreement at issue in the present case, contained no time within which the plaintiff had to make her choice to sell in order to trigger the defendant's option to purchase, and the court concluded that since the option had to be exercised within a reasonable time, the agreement was no longer valid. CT Page 10210
The Agreement in the present case contains no termination date for the right of first refusal and fails to establish the rights of the parties in the event that the Kinstlers' decided not to sell the property during their lifetime. The plaintiff claims that while no termination date was recited, it was the intent of the parties that the right of first refusal would, in the event that the Kinstlers did not elect to sell the property in their lifetime, be triggered by the death of the last surviving joint tenant. It is true that in the absence of any time for performance in the Agreement, a reasonable time for performance may be inferred by the court. Breen v. Phelps, 186 Conn. 86, 92 1982); Old Quarry Ass'n. v. Hickey, 659 F. Sup. 1064, 1071 (D. Conn. 1986) (where the written agreement fails to specify when the contract is to be performed, a reasonable time for performance will be implied).
However, we are unable to conclude that a reasonable time for performance of the Agreement, in conformity with the terms of the Agreement itself, would extend beyond the lifetime of the Kinstlers and the passage of twenty four years. Therefore, because any reasonable time has long since expired we hold that the Agreement no longer has any legal effect.
 IV.
The plaintiff also claims that the absence of a termination date in the Agreement renders it invalid as violative of the rule against perpetuities. Because we have already found the agreement to be no longer valid on other grounds, it is not necessary to consider this claim, but we do so because of the infrequency of a Rule against Perpetuities claim and its once vaunted status as the "sanctum sanctorum of the law." In Cohen v. Meola, 37 Conn. Sup. 27 Super. Ct. 1980) the court subjected a right of first refusal agreement to the rule against perpetuities but rejected the claim that the rule was violated because the parties intended the right of first refusal to apply only to the lease period. This reasoning was affirmed by our Supreme Court on appeal, Cohen v. Meola, 184 Conn. 218 (1981). While the Cohen case applied to rights of first refusal in the context of a leasehold, it is clear authority for subjecting rights of first refusal to scrutiny in terms of the rule against perpetuities.
In J L J Associates, Inc. v. Persiani, 41 Conn. Sup. 79,550 A.2d 650 (Emmett, J., 1988) the court explored what was CT Page 10211 termed the "unsettled" status of the rule against perpetuities as applied to rights of first refusal and noted a perceived change in Connecticut's application of the rule against perpetuities:
 [T]he Connecticut legislature [has] substituted a `second look' statute for the common law rule against perpetuities. . . . While the statute does not apply directly to the option at issue in the case, it does indicate a movement in this state's law toward analyzing `perpetuities' problems by review of reasonableness of the restraint imposed at the time the interest vests rather than by invalidating such interests . . . because the possibility exists that the interest will not vest within a reasonable time.
Id. at p. 81.
Judge Emmett noted with approval the approach to this problem taken by the New York Court of Appeals in Metropolitan Transportation Authority v. Bruken Realty Corporation, 67 N.Y.2d 156,492 N.E.2d 379, 67 N.Y.S.2d 306 (1986), in which the court held that the common law rule against reasonable restraints, rather than the rule against perpetuities, applied to a right of first refusal. Under this approach, the validity of the preemptive right rests on its reasonableness, judged by its duration price and purpose.
We adopt this approach and conclude that the Agreement in the present case amounts to an unreasonable restraint on alienation due to its unlimited duration and $75,000 limitation, and that this is a further ground for holding it to be no longer valid.
Judgment may enter for the Defendant Estate on its counterclaim, essentially holding the Agreement dated November 2, 1967, and recorded in the East Hartford Land Records in Vol. 453 at pages 409-410 to be invalid and ordering it to be discharged.
WAGNER, J. CT Page 10212