[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action in seven counts seeking to set aside as fraudulent, seven Conveyances of real property. The action was instituted by the executrix of the estate of Ellen Berty. During the pendency of the proceeding Suzanne Sutton, bankruptcy trustee for Dennis Gorelick, was substituted for Emily Montanaro. The gravamen of the complaint is that in each case the transfers were made with actual intent to avoid a debt owed to the original plaintiff or to hinder or delay its collection. The specific debt referred to is a debt of $147,712.06 against Dennis Gorelick (hereinafter "Dennis") established by a judgment of this court in Bertyv. Gorelick, CV93 307939, August 6, 1996, affm'd 59 Conn. App. 62
(2000); Cert. den. 254 Conn. 933 (2000).
The defendants have interposed as a seventh special defense the claim that the action is time barred by virtue of the provisions of § 52-552j
of the General Statutes. Because this defense is potentially dispostive of one or more of the counts of the complaint it must be addressed at the outset, and its resolution must be guided by our established rules of pleading.
On October 17, 2000 the plaintiff filed a reply to the defendant's seventh special defense. The reply is a general denial but after the denial and at the end of the same paragraph, the plaintiff states the following: "and offers the attached order in support thereof." The order attached to the reply is a copy of defendant's exhibit 37 which corresponds essentially with the allegation contained in paragraph 7 of the plaintiff's revised complaint. Both the reply and the revised complaint allege the existence of an order of the U.S. Bankruptcy Court for the District of Connecticut (Schiff, J.) dated November 18, 1997 in CT Page 3936 which the court found that Dennis waived the defense of the statute of limitations and therefore ordered that Dennis be "estopped from asserting" that particular defense in any state court action. On November 22, 2000 the plaintiff filed a motion to amend her reply which, if granted, would have permitted the plaintiff to assert this very same matter in avoidance of the special defense. On December 4 and 6, 2000 the defendants, respectively, filed objections to the motion to amend. The court notes that the motion was physically attached to the plaintiff's reply memorandum to the defendant's post trial memorandum. It is likely that the clerk of the court never considered it as an adjudicable motion for this reason. The motion was never claimed for argument as required by P.B. § 11-18. The motion was never brought before the court either pursuant to P.B. § 11-13 or otherwise. In short, the motion was never adjudicated.
It is a well settled principle of pleading in this jurisdiction that matters in avoidance of the statute of limitations need not be pleaded in the complaint but only in response to the such a defense properly raised. Ross Realty Corp. v. Surkis, 163 Conn. 333, 392 (1972). However, there is nothing in this principle which suggests that it is improper to do so. The defendants argue however that pursuant to P.B. § 10-57
"matters in avoidance of affirmative allegations in an answer or counterclaim shall be specially pleaded in the reply. Such a reply may contain two or more distinct avoidances of the same defense or counterclaim, but they must be separately stated."
The allegations in paragraph 7 of the reply (as well as paragraph 7of the revised complaint) do not contain a theory of defense based upon the bankruptcy order referred to nor do they contain the factual basis for the defense. The defendants and the court are left to speculate as to whether the matter in avoidance is: (i) the binding of the effect of the bankruptcy order because it is federal in nature; (ii) the doctrine of tolling; (iii) the doctrines of waiver and/or estoppel. P.B. § 10-2
states that "acts and contracts may be stated according to their legal effect, but in so doing the pleading should be such as fairly to apprise the adverse party of the state of facts which it is intended to prove." Both allegations are conclusory. A party trying to overcome a statute of limitations must allege the factual basis for not filing the law suit within the statutory period. Beckenstein v. Potter and Carrier, Inc.,191 Conn. 150, 159 (1983).
The plaintiff contends that the defendants have not objected to these pleading deficiencies and have consequently waived their right to challenge them. This claim is without merit. In their joint trial brief dated November 15, 2000 the defendants argue the insufficiency of the plaintiff's reply, citing several reported decisions in support of that CT Page 3937 objection.
A close reading of the defendants' brief indicates that they recognized that the plaintiff incorporated the bankruptcy order in her pleading but "failed to plead tolling." Again, in their reply briefs the defendants renew their objection by distinguishing the case law which the plaintiff cited in her brief. In fact, in the plaintiff's supplemental post trial memorandum dated January 16, 2001 she seems to characterize the matter in avoidance of the statute of limitations as estoppel and not tolling. Under our system of pleading the defendants were entitled to know the specific legal theory on which the plaintiff relied in her reply. The plaintiff has failed properly to plead matter in avoidance of the statute of limitations either in her revised complaint or in her reply. Two additional considerations support the court's conclusion. First, this court does not construe the bankruptcy order concerning the statute of limitations as having a preclusive effect on this court. The court is aware of no authority for a federal bankruptcy court to limit or control a party's right to assert a defense in a state court law suit. Such court clearly has the right to determine the consequences for doing so when that party subsequently seeks relief from that court. That, however, is a matter for which this court has no concern.
Secondly, the evidence demonstrates persuasively that there exists a substantial question as to whether Dennis knowingly and voluntarily waived the defense. The court reaches this conclusion on the basis of Dennis's testimony and the record of pleadings before the bankruptcy court which evidence Dennis's attempt to have that prohibition set aside.
Notwithstanding the above, construing the general denial contained in paragraph 7 of the plaintiff's reply and revised complaint in a light most favorable to it, it is plausible to argue (although the plaintiff makes no such argument) that by denying that the action is barred by the statute of limitations the plaintiff invokes the supremacy of the federal bankruptcy code over § 52-552j. In fact, had the motion to amend the reply been granted, the preclusive affect of the tolling provisions of the bankruptcy code (11 U.S.C. § 108(c)(2) would have squarely been placed in issue. If then, the plaintiff's tolling argument is reflected in both the revised complaint and the reply, and if 11 U.S.C. § 108(c)(2) is binding on the parties and this court (whether or not properly asserted as a matter in avoidance), then analysis of the statute of limitations defense becomes necessary and in particular its application to each of the seven counts of the plaintiff's complaint.
The parties have stipulated that each transfer was disclosed within the meaning of § 52-552e(b)(3) when it was recorded in the land records CT Page 3938 of the particular jurisdiction in which the property was located.
The dates of the transfers were as follows:
Count Parties Property Date of Transfer
1 Dennis to Gail[1] Southbury 2/18/93
2 Dennis to Dennis Trustee for Margaret Elizabeth Gorelick[2] 1/5 interest Boston 5/28/93 Avenue 3 Dennis trustee for Margaret Elizabeth to Glenn as trustee for Kira Gorelick[3] 1/5 interest Boston 10/29/96 Avenue
4 Dennis individually as 1/5 interest Boston 5/28/93 trustee for Glenn to Glenn as Avenue trustee for Kira
5 Dennis to Frances 50% Palm Beach Florida 4/27/94
6 Dennis to Dennis trustee For Margaret Elizabeth 50% Palm Beach Florida 4/27/94 (Failed deed)
7 Dennis to Glenn Candlelight Terrace 10/05/95
Counts One, Two and Four
On December 3, 1996 Dennis filed a bankruptcy petition in the United States Bankruptcy Court for the district of Connecticut.11 U.S.C. § 108(c)(2) provides as follows:
 (c) Except as provided in section 524 of this title, if applicable non bankruptcy law, an order entered in a non bankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the CT Page 3939 later of —
 (1) The end of such period, including any suspension of such period occurring on or after the commencement of the case; or
 (2) thirty days after notice of the termination or expiration of the stay under section 362, 922, 1201 or 1301 of this title, as the case may be, with respect to such claim.
On November 18, 1997 the bankruptcy court ordered that relief from automatic stay be granted in order to permit Emily Montanaro to prosecute this action against Dennis. This order triggered the running of the 30 day suit commencement period mandated by 11 U.S.C. § 108 (c)(2). On the very next day, namely, November 19, 1997 the thirty day grace period began and ended on December 18, 1997. Without the stay, the statute would have expired on February 18, 1997 for count one and May 28, 1997 for counts two and four. The bankruptcy stay, however, caused the statute to be tolled until December 18, 1997. Therefore, this action must have been commenced sometime between November 19 and December 18, 1997. The plaintiff argues that she met the deadline when she caused her application for prejudgment remedy to be served on the defendants on November 26, 1997. The record in fact confirms the correctness of that date. However, the writ of summons and complaint were not served until March 17, 1998, well beyond the tolled date of December 18, 1997.
The plaintiff's position is controlled by two Appellate Court decisions, Howard v. Robinson, 27 Conn. App. 621 (1992) and Raynor v.Hickock Realty Corp., 61 Conn. 237 (2000). In these cases the court held that prejudgment remedy documents are not the equivalent of a writ necessary to toll the statute of limitations and therefore an action is not commenced within the limitation period by serving an application for prejudgment remedy. Accordingly, judgment must enter for the defendant Dennis on counts one, two and four. Judgment must likewise enter for the remaining defendants because none of them were affected by any bankruptcy stay and so the statute of limitations as to them expired on February 18 and May 28, 1997 respectively.
Count Three
This count alleges a transfer on October 29, 1996 of the very same property involved in count two, to wit: a 1/5th interest in property at Boston Avenue, Bridgeport. Clearly, this action falls well within the limitation period as to that transfer. The issue which arises however from this transaction is, since the prior transfer of this property which CT Page 3940 is the basis for the claimed fraud is insulated from attack by §52-552j and this transfer is not from the judgment debtor in his individual capacity but rather in a representative capacity, whether this transfer is likewise immune from attack by virtue of § 52-552j.
Resolution of this issue depends in the first instance upon an analysis of the nature of § 52-552j. The pertinent portion of the statute and the portion applicable here, provides that "a cause of action with respect to a fraudulent transfer under § 52-552a to § 52-552l, inclusive, is extinguished unless action is brought . . . within four years after the transfer was made."
This statute has been deemed a statute of repose as distinguished from a pure statute of limitations because it extinguishes the cause of action. First Southern Financial Services v. Pulliam, 912 P.2d 828, 930
(N.M. 1996). Its purpose, therefore, is to bar the right, not merely the remedy. U.S. v. Vellalas, 780 F. Sup. 705, [780 F. Sup. 705], (D.Hawaii 1992). "Undoubtedly, statutes of repose differ in some respects from statutes of limitation. "While statutes of limitation are sometimes called `statutes of repose', the former bars right of action unless it is filed within a specified period of time after injury occurs, while `statute of repose' again [terminate] any right of action after a specific time has elapsed, regardless of whether there has as yet been an injury." Baxter v. SturmRuger and Co., 230 Conn. 335, 341 (1994). Therefore, once the cause of action for the May 28, 1993 (count two) transfer was extinguished, it could not have been revived by the October 29, 1996 transfer of the same property interest. Accordingly, judgment must enter for the defendants on count three.
Counts Five and Six
Both of these counts relate to Dennis's 50% interest in property at Palm Beach, Florida. Each conveyance occurred on April 27, 1994 so they fall within the limitation period set by § 52-552j. Discussion of these counts must begin with the understanding that count six describes a conveyance which was void because Dennis had already conveyed the very same property interest to Frances on the same day by deed recorded immediately prior thereto. So, because the conveyance referred to in count six was a nullity it is only the count five conveyance which is at issue. Since the first conveyance however the property has remained out of Dennis's name.
The basis for the claim that this conveyance was fraudulent is that at the time it was made, Dennis was the defendant in Berty v. Gorelick, supra, which sought to recover sums of money which Dennis had CT Page 3941 misappropriated from Ellen Berty and to set aside a fraudulent transfer of the Boston Avenue property. Specifically, the plaintiff alleges that the conveyance was made for no consideration and with actual intent of avoiding the plaintiff's debt to Ellen Berty or of hindering or delaying its collection and that the conveyance deprived Dennis of sufficient means to satisfy his indebtedness to the plaintiff. As stated above, on August 6, 1996 the court (Grogins, J.) entered judgment for the plaintiff in the amount of $147,712.06. It is this indebtedness which the plaintiff claims Dennis sought to avoid fraudulently. To this count the defendants have asserted a special defense (51h) that this court has no jurisdiction over real property located in the State of Florida. Relevant to this claim is the fact in on May 4, 1994 Frances conveyed the same 50% interest in the property to Dennis, as trustee for Elizabeth and Margaret Gorelick. The title continued to be held in this manner up to and including the trial. The consideration recited was $10.00. The court notes that for some unexplained reason this latter transfer is not alleged in the revised complaint.
The parties have not briefed the issue of the court's jurisdiction over this particular transfer. Nevertheless, it is the court's view that while it may have no jurisdiction to affect a direct conveyance or avoidance of the transfer as provided for in § 52-552h, on the other hand, the transferee is Dennis Gorelick, trustee over whom the court has unquestioned jurisdiction. Because the court has personal jurisdiction over Dennis the court may order Dennis to convey the property to himself as an individual pursuant to the broad grant of equitable power conferred by § 52-552h(a)(3)(c). It is noted that at no time has any party indicated the need to make Margaret and Elizabeth either parties plaintiff or defendant as beneficiaries of the property held in trust for them. Whether or not they are necessary parties, the lack of such objection is deemed to have waived the issue. Gaudio Gaudio,23 Conn. App. 287, 305 (1990). Here, the trustee is the holder of the legal title and is the only party that the court believes is indispensable. Foot v. Branford, 109 Conn. 358, 361 (1929).
An action to set aside a fraudulent conveyance has been characterized as essentially equitable in nature. Gaudio v. Gaudio, supra at 303. Within the limits of that power lies the discretion of the court to order Dennis as trustee, to reconvey the Florida property to himself in his individual capacity.
The court's focus must now shift to the merits of the claim of fraudulent transfer. Throughout the trial the plaintiff's cause of action has been based on § 52-552e(a)(1), viz: "actual intent to hinder, delay or defraud any creditor of the debtor". Subsection (b) of the statute sets forth eleven factors, among others, that the court may take CT Page 3942 into consideration in determining actual intent to defraud. The court well realizes that it is the quality of the evidence of intent and not exclusively the eleven factors which controls its determination.
In Connecticut, fraudulent intent must be proved by clear and convincing evidence, for clear precise and unequivocal evidence. Tyresv. Coma, 214 Conn. 8, 11 (1990). "Clear and convincing proof denotes a degree of belief that lies between the belief that is required to find the truth or existence of the fact in issue in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . The burden is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." Wildwood Associates LTD. v. Esposito,211 Conn. 36, 42 (1989); Yamin v. Statewide GrievanceCommittee, 53 Conn. App. 98, 100-101 (1999).
"The determination of the question of fraudulent intent is clearly an issue of fact which must often be inferred from surrounding circumstances." Town Bank Trust Co. v. Benson, 176 Conn. 304, 308-309;Knower v. Cadden Clothing Co., 57 Conn. 202, 221-222 (1889). Such a fact is, then, not ordinarily proven by direct evidence, but rather, by inference from other facts proven — the indicia or badges of fraud. Wilcox v. Johnson, 127 Conn. 539 (1941); Zapolsky v. Sacks,191 Conn. 194, 200 (1983).
In an effort to prove intent by direct evidence the plaintiff relies on the testimony of Frances Nicholas. She testified that while married to Dennis she overheard numerous conversations between Dennis and co-defendant Glenn in which they discussed exchanging properties and devising ways to avoid the obligations of creditors. She stated that she overheard them having these conversations "every single, solitary night for ten years." She also stated that Dennis told her that he transferred the Florida property in order to avoid his creditors, including her. Dennis denied having made this statement.
The court has difficulty accepting this testimony in a context where Dennis in fact conveyed his interest to her on April 27, 1994 and where there was no evidence that she transferred it back to him as trustee for their children under duress. On cross examination she admitted that she felt animosity for both Dennis and Glenn. The animosity for Dennis stemmed from a bitter divorce which occurred in 1998. Her dislike for both Dennis and Glenn was apparent from her testimony and demeanor. The court therefore rejects her testimony on the grounds of lack of credibility. No other evidence was offered relating directly to the CT Page 3943 Florida property.
The court's determinations concerning the eleven factors set forth in § 52-552e(b) are as follows:
(1) The transfer to Frances and then to Dennis as trustee for their children was a transfer clearly made to insiders as that term is defined by § 52-552a(7)(i).
(2) There was no evidence one way or the other offered as to whether Dennis retained possession or control of the property after the transfer.
(3) The transfer was disclosed and not concealed.
(4) Berty v. Gorelick was commenced on September 18, 1993. Transfers were made on April 27 and May 13, 1994. The decision in Berty v.Gorelick was issued on August 6, 1996.
(5) The transfer of this property was not substantially all of Dennis's assets. The court credits the unchallenged evidence that in 1993 Dennis was financially able to pay the amount of the judgment "many times over".
(6) The debtor did not abscond.
(7) The debtor did not remove or conceal assets at any time.
(8) There was no consideration for the transfer.
(9) The debtor was not insolvent at the time of the transfer. In fact, it is not reasonable to infer from Dennis's status of financial soundness in 1993 that that condition did not change materially by April 27, 1994, the date of the transfer there being no contrary evidence. Additionally, Dennis owned other assets at the time of and after this transfer and had an A-1 credit rating.
(10) The transfer occurred shortly after the debtor incurred $147,712.06 in debt to Ellen Berty as determined conclusively by the court in Berty v. Gorelick, supra.
(11) Inapplicable.
Of the ten applicable factors only four have a positive tendency to support fraudulent intent, viz. (1), (4), (8) and (10). The plaintiff has failed to prove fraudulent intent by clear and convincing evidence either CT Page 3944 by direct evidence or by reasonable inference.
Count Seven
The circumstances surrounding the transfer of the Candlelight Terrace property are unusual. Sometime during the 1970's Dennis and Glenn's grandmother Ellen Gorelick died leaving this property to Dennis for himself and for Glenn. However, the property was placed in Dennis's name only because at the time Glenn had an "unstable life style" and the grandmother was concerned that Glenn might lose his half interest to creditors.
In 1989, Dennis mortgaged the property as security for a $78,000 loan. Glenn did not share in the proceeds of the loan. In February 1995, Dennis defaulted in his mortgage payments and the holder of the mortgage instituted foreclosure proceedings. Fearing loss of Glenn's half interest and in a misguided effort to protect Glenn's interest from foreclosure, Dennis prepared a deed quit conveying to Glenn his one half interest in the property. The deed was recorded on October 5, 1995. Glenn took title subject to the mortgage and so his interest was foreclosed out at the same time as Dennis's interest. G.S. § 52-325. On June 14, 1996 title became absolute in EMC Mortgage Corporation. On July 19, 1996 Glenn acquired title as trustee for his daughter Kira from the holder of the mortgage together with a $90,000 deficiency which had been obtained supplemental to the judgment of foreclosure. The purchase price was $37,610.00. Dennis advanced $34,777 to Glenn which sum comprised the bulk of the purchase price. Glenn then forgave Dennis the deficiency in full. Again, applying the § 52-552e(b) factors the result is as follows:
(1) The transfer was to an insider.
(2) There was no evidence that Dennis retained possession or control of the property.
(3) The transfer was disclosed and not concealed.
(4) The transfer was made during the pendency of and just 18 days before the court adjudicated Berty v. Gorelick. It is noted here that the plaintiff alleges that the October 15, 1995 transfer of a 1/2 half interest to Glenn was the fraudulent transfer. In fact, that deed failed in its purpose because of the pending foreclosure which prevented Glenn from acquiring that interest. So, if any transfer was fraudulent it had to be the involuntary transfer accomplished by the foreclosure pursuant to which Dennis was stripped of his title by the mortgage holder who then, through an arms length transaction with a non insider, facilitated Glenn's purchase of the property. CT Page 3945
(5) This transfer was not substantially all of the debtor's assets.
(6) The debtor did not abscond.
(7) The debtor did not remove or conceal assets.
(8) There was no evidence offered as to the value of this property. The court has no way to determine whether the price of $37,610.00 which was paid for the property reflected fair value or not. In any case, the consideration to Dennis clearly was (i) securing a release from a $90,000 deficiency judgment, and (ii) satisfying his obligation to Glenn to cause Glenn to realize the 1/2 interest which his grandmother left him approximately twenty years earlier.
(9) Dennis filed for bankruptcy just a few months after Glenn acquired title to the property. So it can reasonably be inferred that he was insolvent at the time title became absolute in the mortgage holder and Glenn acquired the property.
(10) As stated in #4 above the transfer from mortgage holder to Glenn as trustee occurred just 18 days before the $147,712.06 judgment.
(11) Not applicable
Of the ten applicable factors, and assuming arguendo, that the transaction by which Glen trustee acquired title was a transfer within the meaning of § 52-552e (the parties have not briefed this issue) only four have a positive tendency to support fraudulent intent, viz: (1), (4), (9) and (10). The plaintiff has failed to prove the allegations of the count by clear and convincing evidence.
In accordance with the foregoing judgment may enter for the defendants.
BY THE COURT,
Mottolese, Judge